**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
―――――――――――――――――――――――――

**DENISE MASON,**

                    **Plaintiff,**

                                                **18-cv-10826 (JGK)**
          **- against –**

                                                <u>**MEMORANDUM OPINION AND**</u>
**REED'S INC.,**                                 <u>**ORDER**</u>

                    **Defendant.**
―――――――――――――――――――――――――

**JOHN G. KOELTL, District Judge:**

     The plaintiff, Denise Mason, brings this putative class action against Reed's Inc. ("Reed's") alleging that the defendant improperly labeled its soda as being, among other things, "All-Natural" and containing "no preservatives."  The defendant alleges that those labels are in fact truthful and accurate.  Seeking injunctive and monetary relief, the plaintiff asserts five claims:  (1) violation of New York General Business Law Section 349, (2) violation of New York General Business Law Section 350, (3) breach of an express warranty, (4) unjust enrichment, and (5) common law fraud.  The defendant moves to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6) for lack of standing and failure to state a claim.

                                **I**

     The following facts are taken from the Second Amended Complaint ("SAC") and assumed to be true for the purposes of the motion to dismiss.

                                1

Reed's is a California corporation with its principal place of business in California.  SAC ¶ 16.  It manufactures, advertises, and distributes various soft drinks in New York and throughout the United States.  SAC ¶ 2, 16.   The plaintiff resides in New York and purchased the defendant's allegedly misleading products.  SAC ¶ 13.

The plaintiff alleges that the defendants put several misleading and false statements on its products.  First, the plaintiff alleges that the defendant's products include the statement "No Preservatives."  SAC ¶ 17.  Second, the products include various statements indicating that the products are "All-Natural," "Brewed with 100% Natural Ingredients," "Made Naturally," and "Made with Natural Ingredients," but the products contain citric acid.  SAC ¶¶ 17, 55.  The plaintiff alleges that citric acid is a preservative and, due to the way it is manufactured for the products at issue in this case, not "natural."  SAC ¶¶ 17-36, 55-76.  The plaintiff further alleges that she and the members of the putative class relied on these misleading statements when they purchased the defendant's products, and that the defendant knew these statements were false and included the false statements with the intent to deceive consumers.  SAC ¶¶ 39, 41-46.  The plaintiff alleges she paid a price premium for a product she believed to be all natural and without preservatives.  SAC ¶ 47.

In support of her allegations that the product is not
natural and contains preservatives, the plaintiff points to the
definition of "chemical preservative" by the Food and Drug
Administration (the "FDA") as a chemical that "tends to prevent
or retard deterioration" of the food to which it is added, with
certain exceptions.  SAC ¶ 18 (citing 21 C.F.R. § 101.22(a)(5)).
Moreover, on its website, the FDA lists citric acid as a
preservative.  SAC ¶ 21.  The FDA also has sent at least one
warning letter to a company in which it suggests that citric
acid is a preservative.  See SAC Ex. B.  The plaintiff also
includes a declaration of a food scientist, Dr. Meyers, in which
Dr. Meyers asserts that citric acid functions as a preservative.
SAC Ex. C ¶¶ 24, 27.  In addition to functioning as a
preservative, citric acid can be used for flavoring purposes.
SAC ¶¶ 22, 36.

While citric acid is naturally occurring in citrus fruits,
the plaintiff alleges that the citric acid used in the
defendant's products is not naturally occurring.  Instead, the
plaintiff alleges that the defendant used citric acid fermented
by a strain of black mold fungus known as Aspergillus niger.
SAC ¶ 56.  The FDA has identified citric acid produced in this
fashion as synthetic.  SAC ¶ 57.  The FDA does not provide a
definition of "natural," but it has said that it has not
objected to the use of the term "natural" where the food does

3

not contain "added color, artificial flavors, or synthetic substances."  SAC ¶¶ 62-65.  The FDA has also sent entities warning letters suggesting that supplemental citric acid is not a "natural" ingredient.  SAC ¶¶ 68, 71, Ex. D.

The defendant moves to dismiss the Second Amended Complaint, arguing that the plaintiff does not have standing to seek injunctive relief and that the defendant's statements were not misleading.

## II

When presented with a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, and a motion to dismiss on other grounds, the first issue is whether the Court has the subject matter jurisdiction necessary to consider the merits of the action. See Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990).[1]  The defendant argues that the plaintiff lacks standing to seek injunctive relief because she fails to allege that she will purchase the defendant's products in the future.

Article III of the United States Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies."

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, citations, emphasis, and internal quotation marks in quoted text.

See Lujan v. Defenders of Wildlife, 504 U.S. 555, 559 (1992).
To satisfy the requirements of Article III standing, a plaintiff
must show that (1) the plaintiff has suffered an actual or
imminent injury in fact, which is concrete and particularized;
(2) there is a causal connection between the injury and
defendant's actions; and (3) it is likely that a favorable
decision in the case will redress the injury.  See id. at 560–
61.  "The party invoking federal jurisdiction bears the burden
of establishing these elements."  Id. at 561; see also Springer
v. U.S. Bank Nat'l Ass'n, No. 15-cv-1107, 2015 WL 9462083, at *3
(S.D.N.Y. Dec. 23, 2015).  In a class action, a court must
analyze the injuries allegedly suffered by the named plaintiff,
not unnamed members of the potential class, to determine whether
the plaintiff has Article III standing.  See Warth v. Seldin,
422 U.S. 490, 502 (1975).  The defendant only contests whether
the plaintiff has standing to pursue injunctive relief.

    In this case, the plaintiff has not alleged that she would
buy the defendant's products again.  The plaintiff argues that
she does not need to allege that she would buy the products
again to have standing to pursue injunctive relief.  She cites
to Belfiore v. Procter & Gamble Co. (Belfiore I) for the
proposition that requiring a plaintiff to allege that the
plaintiff would continue to purchase a product the plaintiff
knew was materially misleading "would denigrate the New York

5

consumer protection statute, designed as a major support of
consumers who claim to have been cheated" because "once the
consumer learned of the deception, [the consumer] would
voluntarily abstain from buying[.]"  94 F. Supp. 3d 440, 445
(E.D.N.Y. 2015).  Indeed, some courts in this Circuit have held
that "plaintiffs have standing to seek injunctive relief based
on the allegation that a product's labeling or marketing is
misleading to a reasonable consumer." Ackerman v. Coca-Cola Co.,
No. 09-cv-395, 2013 WL 7044866, at *15 n.23 (E.D.N.Y. July 18,
2013).  Those cases were based on an interpretation of the
public policy rationale of the New York consumer protection
statutes.  The court in Belfiore I explicitly noted that it
based its decision on the fact that the Court of Appeals had not
"addressed the issue of whether a plaintiff, with no claim of
probable future injury, may pursue an injunction under state
consumer protection statutes." Belfiore I, 94 F. Supp. 3d at
444.  However, the Court of Appeals for the Second Circuit has
since held that "[a] plaintiff seeking to represent a class must
personally have standing" and that while "past injuries may
provide a basis for standing to seek money damages, they do not
confer standing to seek injunctive relief unless the plaintiff
can demonstrate that she is likely to be harmed again in the
future in a similar way." Nicosia v. Amazon.com, Inc., 834 F.3d
220, 239 (2d Cir. 2016).  The plaintiff's reliance on the public

policy rationale for standing in this context advanced in
Belfiore I, which predated Nicosia, is unavailing.  See, e.g.,
Troncoso v. TGI Friday's Inc., No. 19-cv-2735, 2020 WL 3051020,
at *4 (S.D.N.Y. June 8, 2020) ("As other courts in this Circuit
have acknowledged, Nicosia trumps the public policy rationale
presented in Belfiore I.") (collecting cases).  Indeed, courts
that have addressed this issue after Nicosia have concluded that
a plaintiff in these circumstances does not have Article III
standing to pursue injunctive relief.  See, e.g., Ashour v.
Arizona Beverages USA LLC, No. 19-cv-7081, 2020 WL 5603382, at
*4 (S.D.N.Y. Sept. 18, 2020); Troncoso, 2020 WL 3051020, at *4;
Quiroz v. Beaverton Foods, Inc., No. 17-cv-7348, 2019 WL
1473088, at *3-4 (E.D.N.Y. Mar. 31, 2019).

     The Court of Appeals for the Second Circuit recently noted
that "[w]hether plaintiffs seeking injunctive relief for
consumer deception have standing where they allege that they
would buy the products in the future if not mislabeled is
unsettled in this Circuit."  Axon v. Florida's Nat. Growers,
Inc., 813 F. App'x 701, 703 n.1 (2d Cir. 2020).  However, in
this case the plaintiff has not alleged in the Second Amended
Complaint that she would purchase the defendant's products again
if not mislabeled, and the Court of Appeals has made clear that
a plaintiff in a consumer protection suit does not have standing
to seek injunctive relief unless the plaintiff can demonstrate

that she is likely to suffer a similar injury in the future.
See Nicosia, 834 F.3d at 239.  Rather, the plaintiff
specifically alleged that she, and the members of the putative
class, would not have purchased the defendant's products at
their advertised price had she and the members of the putative
class known the labels were misleading.  SAC ¶¶ 47, 137, 149,
158.  And because the named plaintiff must personally have
standing, even if other members of the putative class may suffer
future injury, that is not sufficient for the plaintiff to have
standing to seek injunctive relief.  See Nicosia, 834 F.3d at
239.

Accordingly, the plaintiff does not have standing to sue
for injunctive relief.

### III

### A

In deciding a motion to dismiss pursuant to Rule 12(b)(6),
the allegations in the complaint are accepted as true, and all
reasonable inferences must be drawn in the plaintiff's favor.
McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir.
2007).  The Court's function on a motion to dismiss is "not to
weigh the evidence that might be presented at a trial but merely
to determine whether the complaint itself is legally
sufficient."  Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir.
1985).  The Court should not dismiss the complaint if the

8

plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." Id. When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

### B. New York General Business Law §§ 349 & 350

The defendant argues that the plaintiff cannot state plausibly that the defendant violated sections 349 and 350 of the New York General Business Law because the defendant's conduct is protected by the laws' safe harbor provisions. Sections 349 and 350 prohibit respectively "[d]eceptive acts or

practices in the conduct of any business, trade or commerce" and
"[f]alse advertising in the conduct of any business, trade or
commerce[.]" N.Y. Gen. Bus. L. §§ 349 & 350.  "The standard for
recovery under General Business Law § 350, while specific to
false advertising, is otherwise identical to § 349." Goshen v.
Mut. Life Ins. Co. of N.Y., 774 N.E.2d 1190, 1195 n.1 (N.Y.
2002).  To state a claim under either section, "a plaintiff must
allege that a defendant has engaged in (1) consumer-oriented
conduct that is (2) materially misleading and that (3) plaintiff
suffered injury as a result of the allegedly deceptive act or
practice." City of New York v. Smokes-Spirits.Com, Inc., 911
N.E.2d 834, 838 (N.Y. 2009); see also Orlander v. Staples, Inc.,
802 F.3d 289, 300 (2d Cir. 2015).  Conduct is materially
misleading if it is "likely to mislead a reasonable consumer
acting reasonably under the circumstances." Oswego Laborers'
Local 214 Pension Fund v. Marine Midland Bank, N.A., 647 N.E.2d
741, 745 (N.Y. 1995).  A plaintiff need not plead with the
particularity required by Federal Rule of Civil Procedure 9(b).
Pelman ex rel. Pelman v. McDonald's Corp., 396 F.3d 508, 511 (2d
Cir. 2005).

First, there is no dispute that the defendant engaged in
consumer-oriented conduct.  The defendant marketed and sold its
products in New York and elsewhere, and the plaintiff purchased
those products.

Second, the plaintiff alleges that the "All-Natural" and "no preservative" labels were materially misleading because they were false and likely to mislead a reasonable consumer acting reasonably.  The plaintiff alleges that there were two types of misleading statements: that the products contained no preservatives and that the products were all natural.

The plaintiff alleges that the defendant's labeling is false and misleading because the products contain citric acid, a preservative.  To support this claim, the plaintiff provided detailed allegations, including that the FDA described citric acid as a preservative, that the FDA sent warning letters that suggested that citric acid was a preservative, and provided an expert declaration explaining how citric acid acts as a preservative in food and beverages.  Based on these allegations, the plaintiff has stated plausibly that the "no preservatives" label was false and misleading.  See, e.g., Quiroz, 2019 WL 1473088, at *8 (holding that the court could not conclude that citric acid was not a preservative at the motion to dismiss phase); Hu v. Herr Foods, Inc., No. 16-cv-5037, 2017 WL 11551822, at *1 n.4 (E.D. Pa. Sept. 26, 2017) (concluding that, based on an expert declaration, the plaintiff plausibly pleaded that citric acid was a preservative).

The plaintiff also alleges that the defendant falsely advertises the products as "All-Natural" even though the

products contain citric acid as extracted from Aspergillus
niger.  The plaintiff alleges that the citric acid, as
manufactured from Apergillus niger, contains synthetic solvents,
which would make the "All-Natural" label misleading.  The
plaintiff also points to two FDA warning letters that suggest
that citric acid, as produced by Aspergillus Niger, makes an
"All-Natural" label misleading.  SAC Exs. D & E.  The defendant
contends that Apergillus niger creates citric acid in a natural
process, but the operative question is whether the plaintiff has
stated plausibly that the label is likely to be misleading to a
reasonable consumer acting reasonably.  See, e.g., Ault v. J.M.
Smucker Co., No. 13-cv-3409, 2014 WL 1998235, at *6 (S.D.N.Y.
May 15, 2014) ("The question is whether a reasonable consumer
would be misled by Crisco Oil's use of the 'All Natural'
label.").  The FDA's views, while relevant, are not dispositive
on this question.  See id. ("While any FDA views on what
'natural' means may be relevant to this inquiry, they are not
dispositive."); see also Segedie v. Hain Celestial Grp., Inc.,
No. 14-cv-5029, 2015 WL 2168374, at *11 (S.D.N.Y. May 7, 2015)
("[T]he FDA's and USDA's respective policies concerning
'natural,' while potentially relevant, are not controlling.").
Nonetheless, the FDA material, at minimum, makes the plaintiff's
allegations plausible rather than merely possible, see Iqbal,
556 U.S. at 678, and as a result, the plaintiff has pleaded

12

adequately that the "All-Natural" statements are likely to be materially misleading.

Third, the plaintiff alleges injury in that she paid a price premium for the product that she thought was all natural and without preservatives.  A plaintiff alleges an injury under sections 349 and 350 when the plaintiff alleges that "on account of a materially misleading practice, [the plaintiff] purchased a product and did not receive the full value of [the] purchase." Orlander, 802 F.3d at 302.  And, as the plaintiff alleges in this case, several courts have found that paying a price premium is sufficient injury to state a claim under sections 349 and 50. See, e.g., Axon, 813 F. App'x at 703-04; Koenig v. Boulder Brands, Inc., 995 F. Supp. 2d 274, 288 (S.D.N.Y. 2014); Lazaroff v. Paraco Gas Corp., 967 N.Y.S.2d 867, 867 (Sup. Ct. 2011).

Accordingly, the plaintiff has alleged adequately that the defendant engaged in consumer-oriented activity that was materially misleading and caused the plaintiff a cognizable injury.

The defendant argues that, even if the plaintiff can allege prima facie claims under Sections 349 and 350, those claims should be dismissed nonetheless because the defendant complied with the statutes' safe harbor provisions.  New York General Business Law provides that "it shall be a complete defense that

13

the act or practice is, or if in interstate commerce would be, subject to and complies with the rules and regulations of, and the statutes administered by, the federal trade commission or any official department, division, commission or agency of the United States as such rules, regulations or statutes are interpreted by the federal trade commission or such department, division, commission or agency or the federal courts." N.Y.G.B.L. § 349(d); see also § 350-d (similar language).

The defendant argues initially that citric acid is natural, as defined and interpreted by the FDA and the United States Department of Agriculture (the "USDA"). To support its argument, the defendant points to a 2015 Technical Evaluation Report by the USDA that stated that citric acid is natural. The defendant also cites to a regulation issued by the United States National Organic Program that states that citric acid produced by Aspergillus niger can be included in products listed as organic. See 7 C.F.R. § 205.605. The USDA also issued guidance listing citric acid as non-synthetic. The defendant points out that Aspergillus niger is a naturally occurring organism and that the fermentation that produces citric acid is a naturally occurring process. The defendant also points to language from some FDA regulations suggesting that citric acid is naturally occurring and other warning letters suggesting that, in certain

contexts, citric acid could be considered natural.  See 21
C.F.R. § 184.1033(a).

The plaintiff responds that the FDA, not the USDA or the
National Organic Program, has primary authority to establish
labeling requirements for food and ingredients, and therefore as
it relates to the safe harbor provisions for Sections 349 and
350, the FDA's interpretation of "natural" should control.  See
Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 et seq.;
Nutrition Labeling and Education Act, 21 U.S.C. § 343.  The
plaintiff points out that the standards for what is considered
organic by the National Organic Program and the USDA is a
distinct inquiry from what is considered natural for the
purposes of labeling, and that the FDA has the authority to
regulate labeling on most food products.  See In re KIND LLC
"Healthy & All Natural" Litig. (In re Kind LLC I), 209 F. Supp.
3d 689, 695 (S.D.N.Y. 2016) ("[T]he issue of whether the
particular ingredients referenced in the Complaint rendered the
'all natural' label misleading seems to be particularly within
the FDA's discretion.").  The FDA has not defined the term
"natural," and the plaintiff has alleged sufficiently that the
FDA guidance interpreting "natural" precludes the application of
the relevant safe harbor provisions.  The plaintiff points out
that the citric acid, as used in the defendant's products may
have synthetic solvent residues from the way in which it is

15

produced, which would argue against its being natural.  The
inconsistent definitions and descriptions by the FDA and USDA
suggest the conclusion that the definition of "natural" is
ambiguous.  Accordingly, it would be premature to conclude at
the motion to dismiss phase that the plaintiff failed to state a
claim that the "All-Natural" label is misleading or that the
defendant complied with the relevant safe harbor provisions.
See, e.g., Ault, 2014 WL 1998235, at *6 ("In fact, the FDA has
not developed a definition for the term 'natural' because of the
'complexities' of the factual inquiries involved."); In re
Frito-Lay N. Am., Inc. All Nat. Litig., No. 12-md-2413, 2013 WL
4647512, at *22 (E.D.N.Y. Aug. 29, 2013) (holding that ambiguity
regarding the "all natural" label precluded dismissal pursuant
to the safe harbor provisions).

The defendant next argues that citric acid, at least as
used in the defendant's product, does not function as a
preservative.  The defendant argues that the citric acid in the
defendant's products does not "tend[] to prevent or retard
deterioration" of the products because it is used as a flavoring
agent as opposed to as a preservative.  The defendant argues
that because the citric acid is not acting as a preservative,
the labeling is protected by the safe harbor provisions.  The
defendant cites to an FDA warning letter that states that if
citric acid is functioning as a preservative, the product must

16

disclose that it contains preservatives.  The defendant
mistakenly infers that the inverse must also be true, namely
that if a product contains citric acid not functioning as a
preservative that it need not disclose that it contains
preservatives.  However, there is no basis to find that the safe
harbor provisions would apply where citric acid, although a
preservative, was being used only as a flavoring agent.  In
support of its argument, the defendant states that the plaintiff
failed to allege that the defendant intended the citric acid in
its products to act as a preservative and the defendant contends
that citric acid actually functions as a flavoring agent in its
products.  But whether the citric acid in the products is a
preservative is an objective fact independent of the subjective
intentions of the products' manufacturer.  The plaintiff alleges
in some detail that citric acid is a preservative and acts as a
preservative in the defendant's products.  In his declaration,
Dr. Meyers asserts that citric acid is a preservative and can
act as one in the defendant's products.  See SAC Ex C.
Moreover, the FDA lists citric acid as a preservative on its
website.  And several courts have concluded that, at least at
the motion to dismiss stage, it would be improper to conclude
that citric acid is not a preservative.  See, e.g., Ashour, 2020
WL 5603382, at *3; Quiroz, 2019 WL 1473088, at *8; Hu, 2017 WL
11551822, at *1 n.4.

Accordingly, it is at least ambiguous whether citric acid can be considered a preservative in the defendant's products. Therefore, it cannot be concluded on a motion to dismiss that the defendant complied with the safe harbor provisions.

### C. Breach of Express Warranty

The defendant argues that the plaintiff's breach of warranty claim should be dismissed because the defendant's product description should not be construed as an express warranty.  In order to state a claim for breach of express warranty, a plaintiff must show that there was "an affirmation of fact or promise by the seller, the natural tendency of which was to induce the buyer to purchase and that the warranty was relied upon to the plaintiffs detriment." Friedman v. Medtronic, Inc., 345 N.Y.S.2d 637, 643 (App. Div. 1973).  The "natural tendency" element requires that the seller-defendant's statement be "definite enough" such that the natural tendency of the statement would be to induce purchase.  See Becker v. Cephalon, Inc., No. 14-cv-3864, 2015 WL 5472311, at *7 (S.D.N.Y. Sept. 15, 2015).  The reliance element requires "no more than reliance on the express warranty as being a part of the bargain between the parties." CBS Inc. v. Ziff-Davis Pub. Co., 553 N.E.2d 997, 1001 (N.Y. 1990).

In this case, the plaintiff alleges that the defendant's products contained several express statements, such as "All-

Natural," "No Preservatives," and others.  The defendant

contends those statements are merely product descriptions,

rather than warranties.  However, the statements, as alleged by

the plaintiff, have the natural tendency to induce the buyer to

purchase the defendant's product.  And the plaintiff alleges

that she relied on the defendant's statements as part of the

bargain.  Pursuant to New York Law, "[a]ny description of the

goods which is made part of the basis of the bargain creates an

express warranty that the goods shall conform to the

description."  N.Y.U.C.C. Law § 2-313(1)(b).  As a result,

product labels and advertisements can create express warranties.

See, e.g., Atik v. Welch Foods, Inc., No. 15-cv-5405, 2016 WL

5678474, at *12-13 (E.D.N.Y. Sept. 30, 2016); In re Frito-Lay N.

Am., Inc. All Nat. Litig., 2013 WL 4647512, at *27.  Indeed,

several courts in this Circuit have found that similar

statements on product labels create actionable warranties.  See,

e.g., Ault, 2014 WL 1998235, at *6 ("All Natural");

Goldemberg v. Johnson & Johnson Consumer Cos., Inc., 8 F. Supp.

3d. 467, 482-83 (S.D.N.Y. 2014) ("Active Naturals" in a cosmetic

product); In re Frito-Lay N. Am., Inc. All Natural Litig., 2013

WL 4647512, at *27 ("All Natural").

      Therefore, the statements on the defendant's products can

constitute an express warranty.  Whether those warranties were

breached is a question of fact that cannot be decided on a

motion to dismiss.  The plaintiff has pleaded enough to satisfy her burden to state a claim for breach of express warranty.

### D.  Unjust Enrichment

The defendant argues that the plaintiff's unjust enrichment claim should be dismissed because it is duplicative of other claims and not pleaded with sufficient particularity.  Pursuant to New York law, a claim for unjust enrichment requires a showing "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution."  Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc., 448 F.3d 573, 586 (2d Cir. 2006).  A claim for unjust enrichment "is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff."  Corsello v. Verizon New York, Inc., 967 N.E.2d 1177, 1185 (N.Y. 2012).

In this case, the plaintiff has alleged that the defendant benefited at the plaintiff's expense.  The plaintiff purchased the defendant's product.  The plaintiff also has alleged that equity and good conscience require restitution because the defendant's profit was due to allegedly untrue or misleading statements.  The defendant contends that an unjust enrichment action would be duplicative of the breach of warranty and

Section 349 and 350 claims.  However, even if the plaintiff were
unable to recover for the distinct theories of liability,
Federal Rule of Civil Procedure 8(d)(3) permits a party to state
"as many separate claims or defenses as it has, regardless of
consistency."  Fed. R. Civ. P. 8(d)(3).  Moreover, the Court of
Appeals for the Second Circuit recently noted that "a plaintiff
may plead unjust enrichment in the alternative to a breach of
warranty claim[.]"  Axon, 813 F. App'x at 706.  Therefore, the
plaintiff has pleaded adequately her unjust enrichment claim,
and whether she can recover will turn on issues of fact that
cannot be determined on the motion to dismiss.

Accordingly, "[a]t this stage of the proceedings, [the
plaintiff's] unjust enrichment claim cannot be dismissed on what
is basically a factual issue."  Chrystler Capital Corp. v.
Century Power Corp., 778 F. Supp. 1260, 1272 (S.D.N.Y. 1991)
(denying motion to dismiss unjust enrichment claim pleaded in
the alternative to a breach of warranty claim).

### E.  Common Law Fraud

The defendant argues that the plaintiff's common law fraud
claim should be dismissed because the plaintiff failed to plead
with particularity that the defendant knew that its statements
on its products were false or that the defendant acted with
fraudulent intent.  "Under New York law, to state a claim for
fraud a plaintiff must demonstrate: (1) a misrepresentation or

omission of material fact; (2) which the defendant knew to be
false; (3) which the defendant made with the intention of
inducing reliance; (4) upon which the plaintiff reasonably
relied; and (5) which caused injury to the plaintiff." Wynn v.
AC Rochester, 273 F.3d 153, 156 (2d Cir. 2001).  Federal Rule of
Civil Procedure 9(b) provides that "[i]n alleging fraud or
mistake, a party must state with particularity the circumstances
constituting fraud or mistake." Fed. R. Civ. P. 9(b).  Rule
9(b) requires that a complaint "specify the time, place,
speaker, and content of the alleged misrepresentations."
Caputo v. Pfizer, Inc., 267 F.3d 181, 191 (2d Cir. 2001).
Moreover, the plaintiff must "explain how the misrepresentations
were fraudulent and plead those events which give rise to a
strong inference that the defendant had an intent to defraud,
knowledge of the falsity, or a reckless disregard for the
truth." Id.

In this case, there is sufficient ambiguity in the
regulations and definitions of "natural" and "preservative" that
regulatory guidance alone is not sufficient to infer the
defendant's knowledge that its statements were false or
misleading.  The plaintiff alleges that the plaintiff's attorney
gave the defendant a copy of the complaint, which put the
defendant on notice that its statements were false.  However,
that notice came after the defendant already put its statements

22

on its products and the plaintiff purchased those products.
Therefore, the notice could not have given the defendant
knowledge that its statements were false at the time the
defendant put its statements on the products and at the time the
plaintiff purchased the defendant's products.  Moreover, whether
citric acid is natural or a preservative in the defendant's
products is so ambiguous that even with the plaintiff's notice,
it cannot be inferred that the defendant had actual knowledge
that its statements were false or even acted with reckless
disregard of the statements' truth.  Pursuant to Rule 9(b), to
pursue the common law fraud claim, the plaintiff would need to
plead with more particularity allegations establishing that the
defendant had the requisite knowledge and acted with fraudulent
intent.  Quiroz, 2019 WL 1473088, at *11 (granting motion to
dismiss fraud claim because the plaintiff did not allege
scienter sufficiently where the defendant's product included
citric acid but was advertised as having no preservatives).

        Accordingly, the common law fraud claim is dismissed.

### F.  Non-Restitutionary Disgorgement

        The defendant argues that the Court should dismiss the
plaintiff's non-restitutionary disgorgement remedy because it
would lead to a windfall for the plaintiff.  Given that this
case has not begun discovery, it would be premature to dismiss
the plaintiff's potential remedy.  The defendant cites to

several cases where courts dismissed remedies for non-restitutionary disgorgement. However, the defendant only cites to cases from courts in California interpreting remedies available pursuant to California state law. The defendant provides no basis to conclude the same restrictions on remedies apply under New York law. And without a factual record, it would be inappropriate to conclude what remedies are available to the plaintiff. Until there is a more developed record, the Court defers ruling on whether non-restitutionary disgorgement could be an appropriate remedy in this case.

### G. Class Allegations

The defendant argues that the Court should strike the class allegations in the complaint due to the variations in state law across the country. However, "[c]ourts in this circuit hesitate to strike class allegations before a class certification motion is filed." Ashour, 2020 WL 5603382, at *6; see also Mazzola v. Roomster Corp., 849 F. Supp. 2d 395, 410 (S.D.N.Y. 2012) (declining to consider striking class allegations until a motion for class certification). The question of whether to strike the class allegations requires a more developed record on the facts and law. Accordingly, the motion to strike the class action allegations is denied without prejudice to renewal in connection with a motion for class action certification.

**CONCLUSION**

The Court has considered all of the arguments of the parties.  To the extent not discussed above, the arguments are either moot or without merit.  For the foregoing reasons, the defendant's motion to dismiss is **granted** with respect to the plaintiff's claims for injunctive relief.  It is **denied** with respect to the causes of action pursuant New York General Business Law Sections 349 and 350, for breach of warranty, and for unjust enrichment as claims for non-injunctive relief.  The motion to dismiss is **granted** with respect to the cause of action for common law fraud.  The defendant's requests to strike the non-restitutionary disgorgement remedy and class allegations are **denied** without prejudice to renewal.  The Clerk is directed to close Docket Nos. 41 and 46.

SO ORDERED.

Dated:      New York, New York
            January 28, 2021            /s/ John G. Koeltl
                                          John G. Koeltl
                                    United States District Judge