UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK


| | |
|---|---|
| DENISE MASON, Individually and on Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) 1:18-cv-10826-JGK ) |
| vs. | ) ) ) |
| REED'S INC. DBA VIRGIL'S SODAS, | ) ) |
| Defendant. | ) ) ) |



JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
AND MEMORANDUM OF LAW IN SUPPORT

**TABLE OF CONTENTS**

PAGE

I. INTRODUCTION ............................................................................................. 2

II. THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL ................... 9

    A. The Proposed Settlement Is Within the Range of Possible Final Approval ............ 9

        1. The Proposed Settlement Is Fair .................................................... 9

        2. The Proposed Settlement Is Adequate ......................................... 11

III. THE COURT SHOULD PRELIMINARILY CERTIFY THE CLASS ......................... 13

    A. Standards Applicable to Class Certification ......................................... 13

    B. Plaintiff Satisfies the Requirements of Rule 23(a) ............................... 15

        1. The Members of the Proposed Class Are So Numerous that Joinder of All Members Is Impracticable ................................................. 15

        2. Questions of Law and Fact Are Common to the Proposed Class ............. 16

        3. Plaintiff's Claims Are Typical of Those of the Proposed Class ............... 16

        4. Plaintiff Will Fairly and Adequately Protect the Interests of the Class .................................................................................. 17

    C. The Requirements of Rule 23(b) Are Satisfied .................................... 19

IV. PLAINTIFF'S COUNSEL'S ANTICIPATED FEE AND EXPENSE AWARD REQUEST IS REASONABLE ........................................................................ 21

V. CONCLUSION ............................................................................................. 22

# TABLE OF AUTHORITIES

**CASES**                                                                 **PAGE**

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
    568 U.S. 455 (2013).................................................................................................15

*Ass'n for Disabled Ams. Inc. v. Amoco Oil Co.*,
    211 F.R.D. 457 (S.D. Fla. 2002) .......................................................................20

*Berry v. Schulman*,
    807 F.3d 600 (4th Cir. 2015), *cert. denied sub nom. Schulman v. LexisNexis*
    *Risk & Info. Analytics Grp., Inc.*, 137 S. Ct. 77 (2016) ...................................21

*Broussard v. Meineke Disc. Muffler Shops, Inc.*,
    155 F.3d 331 (4th Cir. 1998) .............................................................................17

*Bullock v. Bd. of Educ.*,
    210 F.R.D. 556 (D. Md. 2002)..........................................................................15

*Bulmash v. Travelers Indem. Co.*,
    257 F.R.D. 84 (D. Md. 2009).............................................................................13

*Charron v. Pinnacle Grp. N.Y. LLC*,
    269 F.R.D. 221 (S.D.N.Y. 2010) ......................................................................14

*Clark v. Experian Info. Sols., Inc.*,
    Nos. 8:00-1217-24, 8:00-1218-24, 8:00-1219-24, 2002 U.S. Dist. LEXIS
    20410 (D.S.C. June 26, 2002)...........................................................................16

*Covarrubias v. Capt. Charlie's Seafood, Inc.*,
    No. 2:10-CV-10-F, 2011 WL 2690531 (E.D.N.C. July 6, 2011) .........................13

*Emcor Grp., Inc. v. Great Am. Ins. Co.*,
    No. CIV.A. ELH-12-0142, 2013 WL 1315029 (D. Md. Mar. 27, 2013) ................2

*Fiberglass Insulators, Inc. v. Dupuy*,
    856 F.2d 652 (4th Cir. 1988) ..............................................................................2

*Gariety v. Grant Thornton, LLP*,
    368 F.3d 356 (4th Cir. 2004) .............................................................................15

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    903 F.2d 176 (2d Cir. 1990)..............................................................................17

*Grice v. PNC Mortg. Corp. of Am.*,
    No. CIV.A.PJM-97-3084, 1998 WL 350581 (D. Md. May 21, 1998) .................10

*Gunnells v. Healthplan Servs., Inc.*,
   348 F.3d 417 (4th Cir. 2003) ..............................................................................13

*Holsey v. Armour & Co.*,
   743 F.2d 199 (4th Cir. 1984) ..............................................................................15

*Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   855 F. Supp. 825 (E.D.N.C. 1994).......................................................................10

*In re BearingPoint, Inc. Sec. Litig.*,
   232 F.R.D. 534 (E.D. Va. 2006) ....................................................................14, 17

*In re Jiffy Lube Sec. Litig.*,
   927 F.2d 155 (4th Cir. 1991) .......................................................................9, 10, 12

*In re Kirschner Med. Corp. Sec. Litig.*,
   139 F.R.D. 74 (D. Md. 1991) ..............................................................................16

*In re MicroStrategy Inc. Sec. Litig.*,
   110 F. Supp. 2d 427 (E.D. Va. 2000) .............................................................11, 18

*In re Mills Corp. Sec. Litig.*,
   257 F.R.D. 101 (E.D. Va. 2009).....................................................................16, 18

*In re Montgomery Cnty. Real Estate Antitrust Litig.*,
   83 F.R.D. 305 (D. Md. 1979)..............................................................................10

*In re Red Hat, Inc. Sec. Litig.*,
   No. 5:04-CV-473-BR (3), 2010 WL 2710517 (E.D.N.C. June 11, 2010)..........9, 11

*Isby v. Bayh*,
   75 F.3d 1191 (7th Cir. 1996) ..............................................................................11

*Krakauer v. Dish Network L.L.C.*,
   311 F.R.D. 384 (M.D.N.C. 2015) ........................................................................16

*Kubilius v. Barilla America, Inc*
   No. 18 C 6656 (U.S.D.C, N.D. Illinois, Eastern Division)..................................... 7

*Leszczynski v. Allianz Ins.*,
   176 F.R.D. 659 (S.D. Fla. 1997).....................................................................14, 19

*Minter v. Wells Fargo Bank, N.A.*,
   274 F.R.D. 525 (D. Md. 2011).............................................................................15

*Minter v. Wells Fargo Bank, N.A.*,
   No. WMN-07-3442, 2011 U.S. Dist. LEXIS 47588 (D. Md. May 3, 2011) ..........16

*Morris v. Wachovia Sec., Inc.*,
   223 F.R.D. 284 (E.D. Va. 2004) ..........................................................................14

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982) ............................................................................................12

*Peoples v. Wendover Funding, Inc.*,
  179 F.R.D. 492 (D. Md. 1998)............................................................................................15

*Quiroz v. Beaverton Foods, Inc.*
  2019 WL 1473088 (E.D.N.Y.) ..............................................................................................7

*Ries v. Ariz. Beverages USA LLC*,
  287 F.R.D. 523 (N.D. Cal. 2012) ........................................................................................14

*Shiring v. Tier Techs., Inc.*,
  244 F.R.D. 307 (E.D. Va. 2007) ....................................................................................17, 18

*Simpson v. Specialty Retail Concepts*,
  149 F.R.D. 94 (M.D.N.C. 1993) ..........................................................................................14

*Stoffels v. SBC Commcn's, Inc.*,
  238 F.R.D. 446 (W.D. Tex. 2006) .......................................................................................19

*Strang v. JHM Mortg. Sec. Ltd. P'ship*,
  890 F. Supp. 499 (E.D. Va. 1995) .......................................................................................10

*Temporary Servs., Inc. v. Am. Int'l Grp., Inc.*,
  No. 3:08-cv-00271-JFA, 2012 WL 2370523 (D.S.C. June 22, 2012) ...................................13

*Temporary Servs., Inc. v. Am. Int'l Grp.*,
  No. 3:08-cv-00271-JFA, 2012 WL 4061537 (D.S.C. Sept. 14, 2012) ...................................10

*Thomas v. La.-Pac. Corp.*,
  246 F.R.D. 505 (D.S.C. 2007) ............................................................................................15

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011).............................................................................................................16

*Walters v. Reno*,
  145 F.3d 1032 (9th Cir. 1998).............................................................................................19

*Wetzel v. Liberty Mut. Ins. Co.*,
  508 F.2d 239 (3d Cir. 1975)................................................................................................20

## STATUTES, RULES AND REGULATIONS

Federal Rules of Civil Procedure
Rule 23.................................................................................13, 14, 15, 20
Rule 23(a)..............................................................................13, 15, 19
Rule 23(a)(1)...................................................................................15
Rule 23(a)(2)...................................................................................16
Rule 23(a)(4).............................................................................17, 19
Rule 23(b).................................................................................19, 19
Rule 23(b)(2)..............................................................................*passim*
Rule 23(b)(3)............................................................................ 16, 20
Rule 23(e).....................................................................................1, 9
Rule 23(e)(2)....................................................................................9


7 Code of Federal Regulations
§205.105..................................................................................... 4, 5
§205.601.........................................................................................5
§205.603........................................................................................ 5
§205.605........................................................................................ 4

21 Code of Federal Regulations
§184.1033...................................................................................... 5

## SECONDARY AUTHORITIES

7AA Charles A. Wright, Arthur R. MIller & Mary K. Kane, *Federal Practice and
   Procedure: Federal Rules of Civil Procedure* §1775 (3d ed. 2017).......................................17

David F. Herr, *Manual on Complex Litigation*, Annotated, §21.24 (2017)....................................17

Ghasem D. Najafpour, "Production of Citric Acid", 2007 Journal of Biochemical Engineering
   and Biotechnology............................................................................................5, 6

# MOTION

Plaintiff Denise Mason ("Plaintiff"), individually and on behalf of all others similarly situated and Defendant Reed's Inc. ("Defendant"), hereby move the Court, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, for an Order: (1) preliminarily approving the proposed settlement in this action (the "Settlement"), as memorialized in the Class Action Settlement Agreement (the "Settlement Agreement" or "Agreement") appended as Exhibit 1 and (2) scheduling a hearing to determine whether the Settlement should be given final approval (the "Settlement Hearing") and establish a deadline for the filing of objections to the proposed Settlement.

The following is a proposed timetable to assist the Court in establishing the necessary deadlines in the Order Preliminarily Approving Settlement ("Preliminary Order" or "Prelim. Ord."):

| Event | Proposed Deadline |
|---|---|
| Filing Motion for Final Approval and for an Award of Attorneys' Fees, Expenses, and Service Award | 45 days prior to the Settlement Hearing |
| Filing Objections | 21 days prior to the Settlement Hearing |
| Settlement Hearing | At least 100 days after Entry of PreliminaryOrder |

# MEMORANDUM OF LAW

## I.    INTRODUCTION

This settlement presented to the Court for preliminary approval ends a consumer class action in the manner and form as it should – an early negotiated resolution that benefits everyone involved. *See, Fiberglass Insulators, Inc. v. Dupuy*, 856 F.2d 652, 654 (4th Cir. 1988) (noting the "public policy of favoring and encouraging settlement"); *Emcor Grp., Inc. v. Great Am. Ins. Co.*, No. CIV.A. ELH-12-0142, 2013 WL 1315029, at *25 (D. Md. Mar. 27, 2013) (same).   During the time that this case has been pending, the parties have had ample opportunity to investigate and research both the factual and legal issues.  The parties have met and conferred in writing, via telephone and via video conference and have exchanged evidence through informal discovery.  The parties have also had the opportunity to confer at length with court-appointed mediator, Noah Hanft, regarding the merits of claims and defenses as well as the risk/benefit of further litigation.

Plaintiff initiated this case on behalf of herself and others similarly situated seeking injunctive relief to stop Reed's Inc. [DBA as Virgil's Sodas] ("Reed's" or "Defendant") from labeling certain flavors of its Virgil's line of sodas[1] ("Products") as being "All Natural" with "No Preservatives".  Plaintiff alleged that Defendant's "No Preservatives" and "All Natural" representations were false because the Products contained citric acid that was not extracted from citrus fruits.  Instead, it was extracted from Aspergillus Niger mold which qualified as both a preservative and a synthetic ingredient.  Plaintiff was also seeking monetary damages alleging that class members paid a premium for Defendant's Products over comparable products that did

---

[1] Specifically, the Products included, Virgil's Handcrafted Root Beer, Virgil's Zero Sugar Root Beer, Virgil's Zero Sugar Vanilla Cream, Virgil's Zero Sugar Lemon Lime, Virgil's Zero Sugar Orange, and Virgil's Orange Cream Soda.

not purport to be natural or preservative-free and therefore class members suffered an injury in the amount of the premium paid.

After some preliminary motion work, the court granted Defendant's motion to dismiss Plaintiff's Second Amended Complaint as to Plaintiff's claims for injunctive relief and common law fraud, but denied Defendant's motion with respect to Plaintiff's for claims breach of warranty and unjust enrichment, as well as those asserted under New York's GBL §§ 349 and 350. The court then ordered the case referred for mediation to the Court's Alternative Dispute Resolution program. The parties submitted mediation statements and the mediation took place on March 19, 2021. During the mediation the parties considered the facts and issues set forth below regarding an appropriate settlement in the matter.

Plaintiff's complaints had originally alleged that Citric Acid was "synthetic" and was not a "natural ingredient" based in part upon a 1995 "Technical Evaluation Report" ("TER") commissioned by the United States Department of Agriculture, Agriculture Marketing Service ("USDA AMS") for the National Organic Program. Plaintiff incorporated the USDA's 1995 TER and attached a copy to her FAC. (See Plaintiff's FAC at pp. 10-11; ¶¶ 55-60 and Exhibit C attached to the FAC, the 1995 Technical Evaluation Report ("TER").).

Plaintiff also alleged that the Citric Acid in Defendant's Products was synthetic because it was extracted from Aspergillus Mold and solvents such as sulfuric acid are used to extract the Citric Acid. Plaintiff's Second Amended Complaint alleged that "there are no solvent residues, i.e., synthetic substances, found in citric acid extracted directly from lemons, limes, oranges and tomatoes."

The Defendant noted that the 1995 "Technical Evaluation Report" ("TER") commissioned by the United States Department of Agriculture, Agriculture Marketing Service ("USDA AMS")

for the National Organic Program ("NOP") was superseded in 2016 with the enactment of 7 CFR 205.605 by the NOP which codified Citric Acid made from Aspergillus fermentation as a "non-synthetic" "natural ingredient" acceptable for use in products such as soda that are labeled as organic. Defendant thus asserted that, inasmuch as citric acid "produced by microbial fermentation of carbohydrate substances" such as Aspergillus is by definition a "nonsynthetic" ingredient that may be used in sodas labeled as "organic" which must be made from all natural ingredients as required by law pursuant to 7 C.F.R. §§ 205.605(a) and 205.105.

Thereafter, Plaintiff's Complaint was amended for the express purpose of removing any reference to the 1995 Report and, instead, emphasized the exclusive authority of the FDA with respect to labeling requirements as pertaining to the Products at issue. Plaintiff then maintained that while the 2015 Report and the U.S. National Organic Program determined that citric acid may be used as an allowed non-synthetic ingredient in or on processed products labeled as "organic," this determination is of no consequence with respect to the Products, inasmuch as: (i) the Products' labels do not bear an "organic" representation and, as such, they are not subject to any "organic" labeling regulations; and (ii) it is the FDA, and not the USDA or the U.S. National Organic Program, that has primary statutory authority to establish labeling requirements for foods and food ingredients.

Defendant countered that under the National Organic Program, the USDA had been assigned the authority to regulate the labeling for any and all types of food products including sodas. Whether or not citric acid extracted from Aspergillus mold is a natural ingredient for purposes of labeling when added to soda is well within the scope and authority of the USDA. Pursuant to CFR §205.105: "To be sold or labeled as "100 percent organic," "organic," or "made with organic (specified ingredients or food group(s))," the product must be produced and handled

4

without the use of: (a) Synthetic substances and ingredients, except as provided in §205.601 or §205.603." According to Plaintiff's argument, if Citric Acid extracted from Aspergillus Mold is an ingredient in any soda with just one milligram of another organic ingredient then it is a "natural" ingredient for the purposes of labeling as a matter of law but when that exact same Citric Acid is used in any soda without one milligram of another organic ingredient then it is a synthetic ingredient for the purposes of labeling.

Defendant maintained that the FDA itself also codified that the type of citric acid used in Reed's products is "a naturally occurring constituent of plant and animal tissues," when obtained "by mycological fermentation" or "from Aspergillus Niger fermentation". See 21 C.F.R. § 184.1033(a) The FDA finding was based on the fact Aspergillus Niger fermentation occurs naturally when Aspergillus mold (a simple plant) is fed carbohydrates it's metabolism naturally produces a surplus of Citric Acid just as a lemon does. Citric Acid is then separated from the Aspergillus by adding calcium oxide to form calcium citrate, which is an insoluble precipitate collected by filtration. The Citric Acid is then separated from its calcium salt by using sulfuric acid as a solvent. The result is pure Citric Acid produced by a plant which contains no sulfuric acid.

Defendant demonstrated that Plaintiff's claim that the extraction of Citric Acid from fruits and vegetables was "natural" meant that the extraction of Citric Acid from Aspergillus must also qualify as "natural" since the methods and tools of extraction are identical. Ghasem D. Najafpour fully explicated the extraction process for fruits and vegetables in his 2007 peer reviewed article entitled, "Production of Citric Acid", published in the Journal of Biochemical Engineering and Biotechnology. The article explained that Citric acid from the juice of fruits such as lemons, oranges, tomatoes etc. is extracted by adding calcium oxide to the fruit to form calcium citrate,

which is an insoluble precipitate collected by filtration. The citric acid is then separated from the calcium salt by using sulfuric acid as a solvent. The result is pure Citric Acid which contains no sulfuric acid.

Conversely, the Plaintiff argued that the FDA, in stating that citric acid is a naturally occurring constituent of plant and animal tissues, was simply stating that citric acid is present in lemons, limes, oranges, tomatoes, garlic, etc. Moreover, in also stating that that citric acid may be produced, i.e., created outside of plant and animal tissue, by a solvent extraction process, the FDA was simply delineating that while citric acid was directly extracted from lemons and other fruits in the 19th Century, this does not describe citric acid today. Today, citric acid is manufactured industrially, usually through the process of fermentation, which is defined as "[a]ny of a group of chemical reactions induced by microorganisms or enzymes that split complex organic compounds into relatively simple substances."

The merits of the Plaintiff's claim that the Citric Acid use in Defendant's Products is artificial has not been resolved and clearly presents highly contested issues and certain challenges of proof. The parties have, however, acknowledged that Defendant's investigation into the pricing of products comparable to Defendant's beverages that did not claim to be "All Natural" and those that did not claim to have "No Preservatives" demonstrated that the Virgil's line of 12 oz. bottled beverages including its root beer actually costs less than 25 comparable "craft" root beers sold in the U.S that contained artificial flavors, artificial coloring, sodium benzoate (a synthetic preservative), citric acid and/or high fructose corn syrup. Virgil's root beer also cost the same price as 23 other comparable "craft" root beers sold in the U.S. that contain artificial flavors, artificial coloring, sodium benzoate (as a synthetic preservative), citric acid (as a natural flavor) and/or high fructose corn syrup.

The parties acknowledged that Reed's remains a relatively small beverage company that has focused primarily on the production, marketing and distribution of ginger beers. Chris Reed founded Reed's in 1987 brewing small batches of ginger beer in his kitchen in Venice Beach, California using a centuries old Jamaican recipe that predated mass production. Soon Reed's began sustainably sourcing its ginger from the Peruvian Amazon. Reed's subsequently acquired the Virgil's line of "craft" sodas and now has a total of 28 employees for both lines (not one employee had been laid off as a result of Covid 19). Shares of Reed's stock had been trading between forty and eighty cents/share on NASDAQ at the time.

Defendant maintained that Reed's utilized citric acid in Virgil's Root Beer for its effect as a flavoring not as a preservative. Defendant argued that the Products in question all employ pasteurization for effective preservation and the quantity of Citric Acid in a twelve-ounce bottle of Virgil's Root Beer amounted to 2/10,000ths of a gram. Plaintiff, on the other hand, based upon the the Declaration of of food scientist, Dr. Marc Meyers, maintained that citric does actually function as a preservative in the Product. Dr. Meyers concluded that that citric acid functions as a preservative in the Products by acting as a pH-reducer, antioxidant, and antimicrobial agent. Defendant offered no expert opinion to counter that of Dr. Meyers. Plaintiff further highlighted the opinion of a number of courts, including the Eastern District of New York, which rejected the argument that a plaintiff was required to plead facts indicating that citric acid "functions as a preservative" in a defendant's product. *See, e.g., Quiroz v. Beaverton Foods, Inc*., 2019 WL 1473088 (E.D.N.Y.); *Kubilius v. Barilla America, Inc.*, No. 18 C 6656 (U.S.D.C, N.D. Illinois, Eastern Division).

After consideration of the foregoing and conferring at length with the court appointed mediator, the parties executed a Term Sheet setting forth the fundamental terms for settlement as

follows:

1. Without admitting wrongdoing, Reed's agreed to be enjoined from using the phrase "All Natural" on any Virgil's Product that includes Citric Acid on its list of ingredients.

2. Without admitting wrongdoing, Reed's agreed to be enjoined from using the phrase "No Preservatives" on any Virgil's Product that includes Citric Acid on its list of ingredients.

3. Reed's may sell through labels already printed; however, all new labels shall conform as stated above.

4. Certification of the class shall be based in part upon the fact that comparable craft sodas in twelve-ounce bottles with labels that do not claim to be "all natural" and do not claim to contain "no preservatives" typically sell for the same price or more than Virgil's sodas such that the class itself requires no monetary compensation and therefore notification is not required.

5. The parties agree that the Defendant will pay the plaintiff's lawyers who brought the lawsuit $32,500.00 (Thirty-Two Thousand, Five Hundred Dollars) as Attorneys' Fees and Expenses for investigating the facts, litigating the case, and negotiating the Settlement. This sum includes $1,000 for the Plaintiff who brought this lawsuit. That payment will be the "Class Representative Service Award."

The permanent injunction will provide: "Reed's is hereby permanently enjoined and restrained from labeling any Virgil's Product that includes Citric Acid on its list of ingredients as "all natural" or as having "no preservatives".

For the reasons that follow, Plaintiff and Defendant jointly request that the Court enter the Preliminary Order.

## II. THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL

Rule 23(e) of the Federal Rules of Civil Procedure requires court approval of the settlement reached in any certified class action. Fed. R. Civ. P. 23(e).

In reviewing the merits of a proposed class action settlement, courts generally employ a two-step approach. *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 827 (E.D.N.C. 1994). ***First***, the court engages in a preliminary approval analysis "to determine whether the proposed settlement is within the range of possible approval or, in other words, whether there is probable cause to notify the class of the proposed settlement." *Id.* ***Second***, after preliminary approval is granted and the class is notified, the court holds a "fairness hearing," where all interested parties may be heard on the proposed settlement. *Id.* If the court concludes that the proposed settlement is "fair, reasonable, and adequate," it will give final approval to the settlement. *Id.*; Fed.R. Civ. P. 23(e)(2). The parties are now requesting the Court to take the first step in this process and grant preliminary approval of the Settlement.

### A. The Proposed Settlement Is Within the Range of Possible Final Approval

Courts typically apply a two-part test to determine whether a proposed settlement conforms to the requirements of the Federal Rules by considering: (1) fairness, which focuses on whether the proposed settlement was negotiated at arm's-length; and (2) adequacy, which focuses on whether the consideration provided to the class members is sufficient. *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158-59 (4th Cir. 1991); *In re Red Hat, Inc. Sec. Litig.*, No. 5:04-CV-473-BR , 2010 WL 2710517, at *1 (E.D.N.C. June 11, 2010).

#### 1. The Proposed Settlement Is Fair

In determining whether a proposed settlement is fair to the parties, courts consider: "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been

conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel." *Jiffy Lube*, 927 F.2d at 158-59; *In re Montgomery Cnty. Real Estate Antitrust Litig.*, 83 F.R.D. 305, 315 (D. Md. 1979). "District courts within [this] Circuit have found that even when cases settle early in the litigation after only informal discovery has been conducted, the settlement may nonetheless be deemed fair." *Temporary Servs., Inc. v. Am. Int'l Grp.*, No. 3:08-cv-00271-JFA, 2012 WL 4061537, at *11 (D.S.C. Sept. 14, 2012) (citing *Grice v. PNC Mortg. Corp. of Am.*, No. CIV.A.PJM-97-3084, 1998 WL 350581, at *6 (D. Md. May 21, 1998)) (preliminarily approving a settlement reached "very early" in the litigation, only months after the filing of the class action complaint, since it contained favorable results for both parties and reflected mutual concessions); *Strang v. JHM Mortg. Sec. Ltd. P'ship*, 890 F. Supp. 499, 501-02 (E.D. Va. 1995) (class action settlement fair where parties reached settlement agreement six months after complaint was filed and plaintiffs conducted "sufficient informal discovery and investigation to fairly evaluate the merits of [the d]efendants' positions during settlement negotiations").

The Settlement here was reached after both Plaintiff and Reed's concluded that, with the benefit of both informal and confirmatory discovery, a negotiated resolution of the action to ensure that the conduct alleged in the Complaint does not occur again was in the best interests of all concerned. The Settlement was only reached after high-level, complex settlement negotiations by highly experienced counsel took place, which weighs in favor of preliminary approval.

Moreover, the parties have acted independently and negotiated at arm's-length to reach the proposed Settlement. Critically, the parties agreed early on in their negotiations that, while an injunctive relief settlement made complete sense in light of, *inter alia*, the small amount of money at issue per class member and the potential difficulties in certifying a Rule 23(b)(3) damages class, no injunctive relief settlement could, under any circumstances, release damages claims.

Finally, regarding counsel's experience in consumer protection law, Gabrielli Levitt LLP has been one of the nation's leading law firms in class action practice generally, and consumer protection law specifically, for several years. Plaintiff's counsel believes that the proposed Settlement is a highly favorable result and in the best interests of the Class. *Red Hat*, 2010 WL 2710517, at *3 (citing *Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996)) (a court is "entitled to give consideration to the opinion of competent counsel that the settlement [is] fair, reasonable, and adequate"); *see also In re MicroStrategy, Inc. Sec. Litig.*, 150 F. Supp. 2d 896, 903 (E.D. Va. 2001) (when it appears that a settlement results from extensive arm's-length negotiations that were conducted in good faith, "it is 'appropriate . . . to give significant weight to the judgment of class counsel that the proposed settlement is in the interest of their clients and the class as a whole.'").

Defendant's counsel believes the proposed settlement is a highly favorable result and in the best interest of Reed's and its shareholders. While Reed's maintains that the ingredients used in its Virgil's line of Products are far superior to traditional soda and Reed's ingredients are natural as defined by law, Reed's has determined alternative labeling that does not include the phrase "all natural" and "no preservatives" will not significantly impact consumer's preference for Virgil's Products. This fact combined with the avoidance of the costs of litigation represents the best interests of Reed's shareholders.

For the foregoing reasons, the proposed Settlement is fair, and warrants this Court's preliminary approval.

## 2. The Proposed Settlement Is Adequate

In determining adequacy, courts consider: "(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation,

(4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." *Jiffy Lube*, 927 F.2d at 159.[4]

Plaintiff believes in her claims regarding Virgil's Products, however, the outcome of any litigation is far from certain and further litigation comes with significant risks as in any lawsuit. With the settlement, Plaintiff has achieved the ***very relief*** she sought in this case – an injunction prohibiting the alleged wrongful conduct from occurring anymore when the court had already dismissed her claim for injunctive relief. While the Settlement admittedly does not provide a common fund of money from which Class members may claim a damages recovery, Class members ***may still seek*** damages from Reed's on an individual basis after the Settlement because those claims are not being released. Thus, the Settlement not only achieves the certainty of an injunction which may never have materialized but for the Settlement, it completely achieves the outcome Plaintiff desired when she initiated the litigation.

To be sure, if the case were to continue, further litigation would include class certification issues, discovery issues, complex fact and expert discovery, and extensive summary judgment briefing. The eventual trial would entail significant costs, delay and uncertainty for all involved, with success for Class members far from assured. Even if successful at trial, the Class faced the likelihood of post-trial motions and appeals, with concomitant costs and delay in recovery.

Moreover, an evaluation of the benefits of settlement must be tempered by a recognition that any compromise involves concessions on the part of all of the settling parties. Indeed, "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982). That said, Plaintiff does not believe she had to compromise much at all in achieving for herself and the Class virtually everything she asked for in the Complaint.

## III. THE COURT SHOULD PRELIMINARILY CERTIFY THE CLASS

"When a settlement is reached prior to Rule 23 certification, the law permits a class to be certified solely for the purposes of settlement." *Covarrubias v. Capt. Charlie's Seafood, Inc.*, No. 2:10-CV-10-F, 2011 WL 2690531, at *2 (E.D.N.C. July 6, 2011). "It is recognized that a potential settlement is a relevant consideration when considering class certification[;] . . . certainly settlement should be... an important factor, to be considered when determining certification." *Temporary Servs., Inc. v. Am. Int'l Grp., Inc.*, No. 3:08-cv-00271-JFA, 2012 WL 2370523, at *1 (D.S.C. June 22, 2012). "[F]or settlement purposes, in order to certify a class, the Plaintiffs must demonstrate that the proposed certification satisfies the prerequisites set forth within Rule 23(a) and Rule 23(b)." *Id.*

The parties propose that the class be defined as "Purchasers of the Products in the United States from 2017 through the date of the Order granting preliminary approval of the settlement."

### A. Standards Applicable to Class Certification

Class actions serve important public purposes, including judicial economy, efficiency, and providing "'aggrieved persons a remedy if it is not economically feasible to obtain relief through the traditional framework of multiple individual damage actions.'" *Bulmash v. Travelers Indem. Co.*, 257 F.R.D. 84, 87 (D. Md. 2009) (quoting *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 424 (4th Cir. 2003)). An action may be certified as a class action pursuant to Rule 23 if each of the four prerequisites of Rule 23(a) is met, and if the action qualifies under one of Rule 23(b)'s subdivisions. Rule 23(a) requires:

(1)  *Numerosity*: the class is so numerous that joinder of all members is impracticable;

(2)  *Commonality*: there are questions of law or fact common to the class;

(3)     ***Typicality***: the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4)     ***Adequacy***: the representative parties will fairly and adequately protect the interests of the class.

Plaintiff seeks class certification pursuant to Rule 23(b)(2), which requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2). "Generally applicable" (in the context of Rule 23(b)(2)) means that the party opposing the class "has acted in a consistent manner towards members of the class so that his actions may be viewed as part of a pattern of activity . . . [directed] to all members." *Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 673 (S.D. Fla. 1997).

The class action device may also be appropriate in consumer protection actions seeking injunctive relief. *See, e.g.*, *Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 541 (N.D. Cal. 2012) ("Those requests can be satisfied with 'indivisible' equitable relief that benefits all class members at once, as the Rule suggests."); *Charron v. Pinnacle Grp. N.Y. LLC*, 269 F.R.D. 221, 229 (S.D.N.Y. 2010)

Courts have construed Rule 23 liberally and have noted that, when in doubt, courts should err in favor of certification. *See, e.g.*, *In re BearingPoint, Inc. Sec. Litig.*, 232 F.R.D. 534, 538 (E.D. Va. 2006); *Morris v. Wachovia Sec., Inc.*, 223 F.R.D. 284, 291 (E.D. Va. 2004) ("[t]he policy in the Fourth Circuit is to 'give Rule 23 a liberal rather than a restrictive construction'"); *Simpson v. Specialty Retail Concepts*, 149 F.R.D. 94, 98 (M.D.N.C. 1993) (same).

In determining whether a class should be certified, the Court need only make factual and legal determinations on the merits to the extent they overlap with findings necessary for its Rule 23

analysis. *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 366 (4th Cir. 2004). Courts should otherwise avoid delving into an evaluation of the merits at the class certification stage. *Minter v. Wells Fargo Bank, N.A.*, 274 F.R.D. 525, 532-33 (D. Md. 2011); *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013) ("Merits questions may be considered to the extent – but only to the extent – that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.").

## B. Plaintiff Satisfies the Requirements of Rule 23(a)

### 1. The Members of the Proposed Class Are So Numerous that Joinder of All Members Is Impracticable

Rule 23 permits class certification if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Impracticability refers only to difficulty, not impossibility." *Peoples v. Wendover Funding, Inc.*, 179 F.R.D. 492, 497 (D. Md. 1998). While there is no precise number of class members necessary to meet this threshold, a proposed class of at least forty members is generally sufficient to establish this requirement. *Thomas v. La.-Pac. Corp.*, 246 F.R.D. 505, 509 (D.S.C. 2007). A plaintiff need not establish the exact size of the proposed class when the court can infer that the class will be large enough to satisfy the numerosity requirement. *See id.*; *see also Bullock v. Bd. of Educ.*, 210 F.R.D. 556, 558 (D. Md. 2002) (in determining numerosity, "the court looks at the 'nature of the claim . . . asserted by the plaintiffs and the number of persons who could have been injured by [the alleged wrongs]'") (quoting *Holsey v. Armour & Co.*, 743 F.2d 199, 217 (4th Cir. 1984)).

Here, informal discovery disclosed that sales of Virgil's Products that contained Citric Acid which were labeled as "all natural" with "no preservatives" during the complaint period exceeded 3 million bottles nationwide. The numerosity element is clearly met.

### 2.      Questions of Law and Fact Are Common to the Proposed Class

As Rule 23(a)(2) requires, the claims of the proposed Class members involve numerous common questions of law and fact.  To establish commonality, class members must have "suffered the same injury," and "[t]heir claims must depend upon a common contention." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  Class members' "common contention . . . must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* The commonality requirement "does not mean that members of the class must have 'identical factual and legal claims in all respects.'" *In re Mills Corp. Sec. Litig.*, 257 F.R.D. 101, 105 (E.D. Va. 2009). Here, questions of fact and law common to all proposed Class members include, *inter alia,* whether Reed's committed a deceptive or unfair trade practice and whether Plaintiff and the Class are entitled to injunctive relief.

Courts have routinely found that common questions of law or fact exist in consumer class actions. *See*, *e.g.*, *Krakauer v. Dish Network L.L.C.*, 311 F.R.D. 384, 400 (M.D.N.C. 2015); *Minter v. Wells Fargo Bank, N.A.*, No. WMN-07-3442, 2011 U.S. Dist. LEXIS 47588, at *81 (D. Md. May 3, 2011); *Clark v. Experian Info. Sols., Inc.*, Nos. 8:00-1217-24, 8:00-1218-24, 8:00 1219-24, 2002 U.S. Dist. LEXIS 20410, at *12-13 (D.S.C. June 26, 2002).  As explained below, the "predominance" of common questions, which would be at issue in a class certified pursuant to Rule 23(b)(3), is not required when a class is certified pursuant to Rule 23(b)(2).

### 3.      Plaintiff's Claims Are Typical of Those of the Proposed Class

The typicality requirement is met if the claim arises "from the same event or . . . course of conduct that gives rise to the claims of other class members, and . . . [is] based upon the same legal theory." *In re Kirschner Med. Corp. Sec. Litig.*, 139 F.R.D. 74, 79 (D. Md. 1991). The typicality

requirement is a safeguard against interclass conflicts, ensuring that the named plaintiff's interests are more or less co-extensive with those of the class. *Id.* As the court explained in *Shiring v. Tier Techs., Inc.*, 244 F.R.D. 307, 312-13 (E.D. Va. 2007), "[a] representative's claim is 'typical' when the class representative is 'part of the class and possess[es] the same interest and suffer[s] the same injury as the class members.'"

However, typicality does not "require that members of the class have identical factual and legal claims in all respects." *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 344 (4th Cir. 1998). Thus, "the mere existence of individualized factual questions with respect to the class representative's claim will not bar class certification." *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990). Due process requires only that the interests of the party representing a class be substantially similar to those of the unrepresented parties. *Broussard*, 155 F.3d at 338.

Here, Plaintiff satisfies the typicality requirement because, like other members of the proposed Class, she seeks to hold Reed's liable for having engaged in an allegedly deceptive and unfair trade practice relating to the labeling of Virgil's Products that contained Citric Acid which as "all natural" with "no preservatives". Accordingly, Plaintiff's claims arise out of the same violations as those of other Class members, meeting the core principles of typicality.

### 4. Plaintiff Will Fairly and Adequately Protect the Interests of the Class

Rule 23(a)(4)'s adequacy requirement "is meant to protect the due process rights of absent class members who will be conclusively bound by the judgment in this case." *Shiring*, 244 F.R.D. at 315. Adequacy is amply satisfied here because Plaintiff's interests are not antagonistic to those of other Class members, and Plaintiff's counsel are qualified, experienced, and fully able to conduct this litigation. *See, e.g.*, *BearingPoint*, 232 F.R.D. at 541.

When the plaintiff has "'a sufficient interest in the outcome of the case to ensure vigorous advocacy'" and does not have interests "'antagonistic to those of the proposed class,'" the adequacy requirement is met. *Shiring*, 244 F.R.D. at 315. Here, as discussed *supra*, Plaintiff ~~was overcharged for a Croissan'wich when using a BOGO coupon offered by Reed's during the Class Period and~~ was injured by the same allegedly deceptive conduct that allegedly injured all proposed Class members. Thus, Plaintiff's interest in establishing Reed's liability and obtaining the best possible recovery is aligned with the interests of absent Class members. *See, e.g.*, *In re MicroStrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 436 (E.D. Va. 2000).

Among other responsibilities throughout the litigation so far, Plaintiff has conducted her own investigation of Reed's practices, provided documentation to her counsel, reviewed pleadings in this action, supervised and monitored the progress of court proceedings, and participated in discussions with her counsel concerning case and settlement developments.

This active engagement in the litigation demonstrates Plaintiff's adequacy. *Shiring*, 244 F.R.D. at 316 (adequacy analysis considered whether plaintiff initiated and supervised litigation, and whether plaintiff was knowledgeable about, among other things, the complaint's allegations and defendants); *see also, Mills*, 257 F.R.D. at 108.

Plaintiff also has engaged qualified, experienced, and capable attorneys who have an excellent track record in prosecuting complex consumer class actions such as this litigation. As their actions in this case and others demonstrate, Plaintiff's chosen counsel have vigorously prosecuted this action on behalf of the Class and have negotiated an appropriate settlement to resolve this action on behalf of all Class members while preserving Class members' right to seek damages, if they choose to do so. As a result, Plaintiff's counsel have fully, fairly and more than adequately represented the interests of the Class. In sum, Plaintiff is well-suited to represent the

Class, has no interests antagonistic to other Class members and, like other Class members, and has been injured by Reed's allegedly deceptive conduct during the Class Period. No unique defenses apply to Plaintiff. Plaintiff is thus willing and able to prosecute this action on behalf of the Class and "will fairly and adequately protect the interests of the class." See Fed. R. Civ. P. 23(a)(4).

### C. The Requirements of Rule 23(b) Are Satisfied

In addition to meeting the prerequisites of Rule 23(a), a purported class action must also satisfy at least one of the conditions of Rule 23(b). Plaintiff seeks class certification for settlement purposes under Rule 23(b)(2). Rule 23(b)(2) certification, which requires "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[,]" is appropriate for effectuating a group remedy. *See Stoffels v. SBC Commcn's, Inc.*, 238 F.R.D. 446 (W.D. Tex. 2006). Under Rule 23(b)(2), "[i]t is sufficient if class members complain of a pattern or practice that is generally applicable to the class as a whole [,] [e]ven if some class members have not been injured by the challenged practice." *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998); *see* 7AA Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure: Federal Rules of Civil Procedure* §1775 (3d ed. 2017).

Rule 23(b)(2) certification examines a defendant's uniform, generally applicable conduct rather than on the individual reactions or transactions of individual class members relating to that conduct, which is when individual questions may arise. *Leszczynski*, 176 F.R.D. at 673. Rule 23(b)(2) classes are mandatory, binding, provide no opt-out rights, and do not require that

notice be given to class members.[2] Fed. R. Civ. P. 23(b)(2); see *Ass'n for Disabled Ams. Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466, 473 (S.D. Fla. 2002) ("the purpose of Rule 23(b)(2) . . . is to finally resolve class disputes."); *see also*, *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 252-53 (3d Cir. 1975) (stating that allowing a (b)(2) class to be certified and opt out of a potential judgment would "permit the institution of separate litigation and would defeat the fundamental objective of (b)(2), to bind the members of the class with one conclusive adjudication."); David F. Herr, Manual on Complex Litigation, Annotated, §21.24 (2017).

In this instance, Plaintiff seeks certification of a Rule 23(b)(2) Class for injunctive relief which precisely addresses the central concern Plaintiff alleges with respect to Reed's line of Virgil's Products. The central allegation of Plaintiff's suit is that Reed's has acted in a consistent manner toward all members of the Class, by incorrectly labeling the Products as "all natural" with "no preservatives". The Settlement obviates this concern by enjoining Reed's from continuing or reinstituting this problem. The heart of the Settlement Agreement is the injunctive relief, which provides a clear, unambiguous injunction that applies nationwide and is generally applicable to all Class members.

Class certification under Rule 23(b)(2) is further called for because it is the most sensible approach to resolving this case in light of the lack of provable damages per Class member. Providing notice to hundreds of thousands of Class members makes no practical sense: the expenses necessary to provide them individual notice and opt-out rights (which Rule 23(b)(3) requires) and the transaction costs dwarf the benefits of any Rule 23(b)(3) monetary relief class would or could provide. The efficiencies which Rule 23 is to promote would be lost. In short, in

---

[2] Pursuant to the Settlement Agreement, Reed's has the right to terminate the agreement should the Court determine that notice should be given to the Class.

both form and substance, nationwide certification under Rule 23(b)(2) is the most effective and practical way to handle this litigation. Clearly, on balance, class certification under Rule 23(b)(2) for settlement purposes is most appropriate and certainly warranted under the present circumstances of this case.[3]

## III.   PLAINTIFF'S COUNSEL'S ANTICIPATED FEE AND EXPENSE AWARD REQUEST IS REASONABLE

Although Plaintiff's counsel's formal request for an award of attorneys' fees and expenses will not be made until Plaintiff seeks final approval of the proposed Settlement, the amount of Plaintiff's counsel's request – $26,500.00 in attorneys' fees and up to $5,000.00 in expenses – is nonetheless very modest and reasonable.

The amount Plaintiff's counsel will seek will, by the time of the fairness hearing, be substantially less than the amount of his lodestar. In this regard it should be noted that courts have expressly approved modest multipliers of class counsel's lodestar when reviewing for abuse of discretion a district court's attorneys' fee award in connection with a class action settlement for permanent injunctive relief, as here. *See, Berry v. Schulman*, 807 F.3d 600, 616-19 (4th Cir. 2015), *cert. denied sub nom. Schulman v. LexisNexis Risk & Info. Analytics Grp., Inc.*, 137 S. Ct. 77 (2016) (approving 1.99 multiplier where "class counsel's fee was negotiated by the parties, and the Agreement allowed for a total attorneys' fee award of up to $5.5 million to be paid entirely by [the defendant,]" and finding that "given the size of the (b)(2) Class and the fragility of [plaintiff's] legal position, there was never any realistic possibility of class-wide monetary relief; put bluntly, there is no reason to think that class counsel left money on the table in negotiating this

---

[3] Reed's reserves its right to challenge class certification for litigation purposes should the Settlement not be approved.

Agreement.").

The amount Plaintiff's counsel will seek in fees is, indeed, appropriate. Plaintiff and her counsel negotiated an early resolution of this case that saves a tremendous amount of attorney and court resources, and, more importantly, benefits the Class and all future purchasers of the Products who, by virtue of the injunction obtained, will no longer be at risk of being subject to the alleged wrongful conduct from occurring anymore. By filing her lawsuit, and negotiating the proposed Settlement, Plaintiff and her counsel ensured that Class members and future purchasers would no longer be at risk of being subject to the alleged wrongful conduct for years to come, while at the same time taking into account the inherent difficulties in locating Class members and distributing, at best, several cents to each of them (which would cost more to mail the actual checks).

By all measures, the proposed Settlement here is not only a perfect resolution for this case, it more than justifies Plaintiff's counsel's forthcoming request for an award of fees and expenses.

## IV.   CONCLUSION

The parties jointly request that the Court: (1) preliminarily approve the proposed Settlement; (2) preliminarily certify the proposed Class; and (3) schedule a Settlement Hearing.

| **GABRIELLI LEVITT LLP** | **GRAVITAS LAW GROUP** |
|---|---|
| Michael Gabrielli (MG-2421) | David Scharf (CA 170083) |
| michael@gabriellilaw.com | david@davidscharf.org |
| 2426 Eastchester Rd., Ste, 103 | 8 Whatney Suite 100 |
| Bronx, New York 10469 | Irvine, CA 92618 |
| Telephone: (718) 708-5322 | Telephone: (949) 569-6282 |
| Facsimile: (718) 708-5966 | Facsimile: (714) 441-5827 |
| | |
| *Counsel for Plaintiff and the Proposed Class* | *Counsel for Defendant Reed's Inc.* |